DRAKE LAW FIRM
Tarek H. Zohdy (SBN 247775)
tarek@drakelawgroup.com
consumer@drakelawgroup.com
Laura E. Goolsby (SBN 321721)
lgoolsby@drakelawgroup.com
Ahmed Yousef (SBN 350533)
ahmed@drakelawgroup.com
19935 Ventura Blvd., Suite 202
Woodland Hills, California 91364
Tel.: (888) 315-5721
Fax: (888) 340-6888

*Attorneys for Plaintiff and the Putative Class*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

DAVID ROSENFELD individually, and on behalf of a class of similarly situated individuals,

Plaintiff,

vs.

BMW OF NORTH AMERICA LLC, a Delaware Limited Liability Company; and BAYERISCHE MOTOREN WERKE AKTIENGESELLSCHAFT ("BMW AG"), a German corporation,

Defendants.

Case No.: 2:26-cv-05690-JFW-RAO

**FIRST AMENDED CLASS ACTION COMPLAINT FOR:**

(1) Violations of California's Consumers Legal Remedies Act
(2) Violations of California's Unfair Competition Law
(3) Breach of Implied Warranty pursuant to Song-Beverly Consumer Warranty Act
(4) Breach of Express Warranty under California law
(5) Breach of Express Warranty under the Magnuson-Moss Warranty Act
(6) Breach of Implied Warranty under the Magnuson-Moss Warranty Act
(7) Fraudulent Concealment/Omission

**DEMAND FOR JURY TRIAL**

**ACTION SEEKING STATEWIDE OR NATIONWIDE RELIEF**

1. Plaintiff David Rosenfeld ("Plaintiff"), individually, and on behalf of all persons in California and the United States who purchased or leased any 2023 to present BMW X1 and 2023 to present BMW X2 vehicles ("Class Vehicles" or "Vehicles") equipped with a 2.0-liter twin-turbocharged engine paired with a 7-speed Dual-Clutch Steptronic transmission ("DCT") designed and manufactured by Bayerische Motoren Werke Aktiengesellschaft ("BMW AG") and imported, marketed, distributed, sold, warranted, and serviced in the United States by BMW of North America, LLC ("BMW NA") (collectively, "Defendants") , brings this action. Plaintiff alleges as follows:

## INTRODUCTION

2. This is a consumer class action concerning a failure to disclose material facts and safety concerns to consumers.

3. BMW AG designed and manufactured, and BMW NA marketed, distributed, sold, and warranted the Class Vehicles without disclosing that the Class Vehicles' powertrain, dual-clutch transmission ("DCT"), and related components, including the transmission software and transfer case ("Powertrain and DCT Systems") were defective.

4. Specifically, discovery will show that the Class Vehicles suffer from a defect in the Powertrain and DCT systems that results in improper clutch engagement, delayed power delivery, abnormal drivetrain response during low-speed operation, and unintended vehicle movement, including rollaway conditions when the vehicle is stopped or at low speeds. Additionally, this defect may result from improper calibration and coordination between the engine, transmission, and braking systems, as well as deficiencies in the software governing throttle input and clutch application. The defect may further result from irregular electrohydraulic actuation within the dual-clutch transmission and associated mechanical components. (the "Rollaway Defect" or "Defect").

5. Among the most concerning consequences of the Rollaway Defect is a pronounced delay in acceleration. Specifically, from a dead stop, a stop or low speeds,

the vehicle may fail to respond to throttle input for several seconds, resulting in a loss of propulsion and delayed vehicle movement. This condition prevents drivers from controlling speed and acceleration as expected and places drivers, passengers, and surrounding motorists at risk of collision.

6. The Rollaway Defect also causes erratic and unpredictable drivetrain behavior, including sudden and harsh engagement of power following delayed acceleration. This can result in abrupt jerking or lurching of the vehicle, increasing the risk of loss of control, particularly in congested or low-speed driving environments.

7. Additionally, the Rollaway Defect causes unintended vehicle movement, including the vehicle rolling forward or backward while in gear and awaiting clutch engagement, and rolling in the direction of a grade independent of throttle input or selected gear. This uncontrolled movement creates a significant safety hazard, particularly on inclines or in traffic, and poses a risk to occupants, pedestrians, and surrounding property. The risk of unintended vehicle movement exacerbates the potential for accidents and injuries or death, highlighting the severe safety implications of this defect.

8. BMW NA sold and distributed the Class Vehicles with a 4-year/50,000-mile Powertrain Warranty ("PW"), which expressly covers the engine, transmission (DCT), drive system, transfer case and transaxle, in addition to a 4-year/50,000-mile bumper-to-bumper New Vehicle Limited Warranty ("NVLW"). These warranties obligate BMW NA to repair or replace defective components, including the Powertrain and DCT Systems, at no cost to the owner or lessee. Nonetheless, numerous Class Vehicle owners have experienced the symptoms of the Rollaway Defect both within and outside the applicable warranty periods. In many cases, BMW NA and its authorized dealers have denied coverage, attributed the Defect to "normal operation," or performed superficial repairs that fail to correct the underlying condition. As a result, consumers are left with vehicles that suffer recurring failures, diminished safety, and substantial out-of-pocket expenses for repairs to the Powertrain and DCT Systems, and related damage.

9. BMW NA's authorized dealerships are replacing and repairing the Powertrain and DCT Systems both within, and just outside, the applicable express warranty periods.

10. The Rollaway Defect is inherent in each Class Vehicle and was present at the time of sale.

11. Discovery will show that, since 2022, if not earlier, BMW AG and BMW NA have been aware the Class Vehicles' Powertrain and DCT Systems were prone to the characteristics of the Rollaway Defect. BMW AG acquired knowledge of the Defect through, among other things, the design, engineering, development, and testing of the Class Vehicles and their Powertrain and DCT Systems, while BMW NA acquired knowledge through, among other things, warranty claims, dealer reports, consumer complaints, and other field data. BMW AG and BMW NA also acquired and shared knowledge of the Defect through their respective roles in developing, approving, disseminating, and implementing technical communications and repair guidance concerning the Class Vehicles. Defendants knew that the Rollaway Defect would cause the symptoms described above, including inability to accelerate, sudden jerking of the vehicle, and uncontrollable rolling of the vehicle on hills or grades.

12. Moreover, many owners have reported that repeated repairs to the Powertrain and DCT Systems did not resolve the condition, demonstrating that BMW AG and BMW NA have not implemented a permanent fix. Defendants not only refused to disclose the problem to consumers, but also actively concealed, and continue to conceal, their knowledge concerning the Rollaway Defect. Internal reports, warranty claim data, and dealership repair orders will confirm that BMW NA and BMW AG have long been aware that the software and hardware solutions implemented thus far are inadequate, yet BMW NA continues to market and sell affected vehicles without disclosing the ongoing risk to consumers. Discovery will further show that BMW AG and BMW NA participated in developing, approving, disseminating, and implementing technical communications and repair guidance concerning those inadequate solutions.

13. BMW AG and BMW NA undertook affirmative measures to conceal the Rollaway Defect and other malfunctions through, among other things, Technical Service Bulletins ("TSB" or "SIB") issued to authorized repair facilities only. BMW AG participated in the development and approval of technical and defect-related communications concerning the Class Vehicles, while BMW NA disseminated those communications to its authorized dealerships in the United States.

14. Indeed, public records confirm that BMW AG and BMW NA have developed and disseminated multiple TSBs and related internal communications acknowledging delayed acceleration, drivetrain hesitation, and other symptoms consistent with the Rollaway Defect. These documents, together with the respective roles of BMW AG and BMW NA in developing, approving, and disseminating technical and defect-related communications concerning the Class Vehicles, demonstrate that both entities were aware of recurring drivability failures in Class Vehicles equipped with the subject Powertrain and DCT systems well before Plaintiff and Class Members purchased or leased their vehicles.

15. Publicly available TSBs include, *inter alia*, SIB 28 01 23, SIB 28 02 24, SIB 12 07 23, and SIB 24 03 23, each of which documents conditions tied to delayed acceleration, drivetrain hesitation, or abnormal transmission behavior, yet instructs dealers to characterize such symptoms as normal operating characteristics or otherwise limits warranty coverage. These bulletins apply directly to the Class Vehicles because they address the same powertrain and dual-clutch transmission systems used in the Class Vehicles.

16. BMW AG and BMW NA had superior and/or exclusive knowledge of material facts regarding the Rollaway Defect through their respective roles concerning the Class Vehicles. BMW AG acquired knowledge through, among other things, pre-production testing, design failure mode analysis, engineering and development information, and technical information concerning the Powertrain and DCT Systems. BMW NA acquired knowledge through, among other things, aggregate part sales,

consumer complaints made directly to BMW NA and its authorized dealers, dealer audits, aggregate warranty information, NHTSA complaints, and dealership repair orders. BMW AG and BMW NA also acquired and shared information concerning the Rollaway Defect through their respective roles in developing, approving, disseminating, and implementing technical communications and repair guidance concerning the Class Vehicles.

17. Despite widespread field reports describing the Rollaway Defect, BMW AG and BMW NA have not implemented an effective repair that addresses the root cause of the Defect. BMW AG and BMW NA developed and implemented service guidance concerning the Defect, which BMW NA disseminated to dealers and which has often characterized the symptoms of the Defect as "normal" and discouraged repairs, leaving consumers with vehicles that remain unsafe and unreliable.

18. The Rollaway Defect is material because, *inter alia,* it poses a safety concern. As attested by Class Members in complaints to the National Highway Traffic Safety Administration ("NHTSA"), the Class Vehicles exhibit an inability to accelerate, sudden jerking of the vehicle, and uncontrollable rolling of the vehicle on hills or grades., thereby increasing the risk of collision and injury.

19. Defendants' failure to disclose the Rollaway Defect caused Plaintiff and putative class members to be exposed to the Rollaway Defect, diminished safety, and/or incur costly repairs that have conferred an unjust substantial benefit upon Defendants.

20. Discovery will show that, in an effort to conceal the Rollaway Defect, BMW AG and BMW NA developed and implemented service guidance concerning the Rollaway Defect, which BMW NA disseminated to its authorized dealers and which instructed dealers to tell consumers their vehicles are "operating normally" or "operating as intended" when they are not, or to give excuses for sub-par performance. This is a common practice in the automotive industry and has occurred here in connection with the Rollaway Defect. By denying the existence of a defect, manufacturers can play on the consumers' lack of technical expertise and avoid implementing potentially costly fixes for years, or at least until the vehicles are out of warranty. When remedial measures are

taken, they are often through the issuance of service bulletins provided to dealers only that are narrowly crafted and underinclusive, as occurred here and set forth below.

21. Had Defendants disclosed the Rollaway Defect, and the inadequacy of the service bulletin remedies, Plaintiff and Class Members would not have purchased and/or leased the Class Vehicles, would have paid less for them, or would have required BMW NA to replace, or pay for the replacement of, the defective Powertrain and DCT System components with non-defective versions before their warranty periods expired.

## THE PARTIES

**Plaintiff David Rosenfeld**

22. Plaintiff David Rosenfeld is a California citizen residing in Venice, Los Angeles, California.

23. On or around February 7, 2024, Plaintiff purchased a new 2023 BMW X1 xDrive28i from South Bay BMW, an authorized BMW dealership.

24. Plaintiff purchased the vehicle primarily for personal, family, or household use.

25. Safety, reliability, and drivability were important factors in Plaintiff's decision to purchase the vehicle. Before making his purchase, Plaintiff researched the BMW X1 online, including on BMW's website and dealership materials. At the dealership, Plaintiff discussed the vehicle's features, including its safety systems and performance, with sales personnel, who made no reference to the Rollaway Defect.

26. Defendants' omissions were material to Plaintiff. Had Defendants disclosed their knowledge of the Rollaway Defect prior to purchase, Plaintiff would have been aware of the defect and would not have purchased the vehicle.

27. Shortly after purchase, Plaintiff began experiencing problems consistent with the Rollaway Defect. The vehicle exhibited delayed acceleration from a stop, hesitation in response to throttle input, and unintended rolling behavior, including rolling in the opposite direction of the selected gear on inclines.

28. On or around October 22, 2024, with approximately 3,925 miles on the odometer, Plaintiff presented the vehicle to South Bay BMW complaining of delayed acceleration, hesitation, and rollaway behavior. The dealership attempted repairs by reworking the interface between the dual-clutch transmission and the transfer case. Despite this repair attempt, the condition was not corrected.

29. Plaintiff continued to experience the same issues during normal operation of the vehicle, including repeated hesitation, delayed engagement, and unintended rolling.

30. On or around February 26, 2025, with approximately 5,880 miles on the odometer, Plaintiff returned the vehicle for further repair. The dealership performed a software update, but the condition persisted.

31. On or around May 1, 2025, with approximately 6,614 miles on the odometer, Plaintiff again presented the vehicle for repair due to continued drivability issues, including delayed acceleration and abnormal transmission response. The condition was not corrected.

32. On or around October 6, 2025, with approximately 8,562 miles on the odometer, Plaintiff returned the vehicle for a fourth repair attempt, reporting that the vehicle jerked forward unexpectedly and rolled backward while on an incline.

33. On or around January 13, 2026, with approximately 10,346 miles on the odometer, Plaintiff presented the vehicle for a fifth repair attempt. Plaintiff reported that the vehicle failed to accelerate despite throttle input and continued to roll backward on inclines. The dealership refused to perform further repairs and informed Plaintiff that the vehicle was operating as designed.

34. On or around April 21, 2026, with approximately 11,114 miles on the odometer, Plaintiff presented the vehicle for a sixth repair attempt. Plaintiff reported that the vehicle lurches forward and continued to roll backward on inclines. The dealership refused to perform further repairs and informed Plaintiff that the vehicle was operating as designed.

35. Despite bringing the vehicle to BMW NA's authorized dealership, BMW NA's agent for repairs, Plaintiff has not received a permanent repair under warranty, and the vehicle continues to exhibit the Rollaway Defect.

36. As a result of the Rollaway Defect, Plaintiff has lost confidence in the ability of the vehicle to provide safe and reliable transportation for ordinary and advertised purposes.

37. As a result of the Rollaway Defect, Plaintiff will be unable to rely on BMW NA's representations or Defendants' disclosures regarding known defects regarding the safety and reliability of the Class Vehicles in the future and, therefore, will not purchase or lease another Class Vehicle, although he would like to do so.

38. At all times, Plaintiff, like all Class Members, drove the vehicle in a manner both foreseeable and in which it was intended to be used.

**Defendants**

39. Defendant BMW of North America, LLC is a limited liability company organized and in existence under the laws of the State of Delaware, with its principal place of business located at 300 Chestnut Ridge Road, Woodcliff Lake, New Jersey 07677. BMW of North America, LLC is engaged in the business of importing, marketing, distributing, servicing, and selling BMW-branded automobiles and motor vehicle components in California and throughout the United States of America. BMW of North America, LLC also participates in the development of and distributes technical materials, including service manuals, technical service bulletins, and recall notices, intended to be used by authorized dealerships in the service and repair of BMW-branded vehicles, and acts as the primary interface with dealerships and consumers in the United States.

40. In order to sell vehicles to the general public, BMW of North America, LLC, authorizes dealerships to sell BMW-branded vehicles to consumers such as Plaintiff. In return for the exclusive right to sell new BMW vehicles in a geographic area, authorized dealerships are also permitted to service and repair these vehicles under the warranties BMW NA provides directly to consumers. These contracts give BMW NA a significant

amount of control over the actions of the dealerships, including the sale and marketing of vehicles and parts. All service and repairs at an authorized dealership are completed according to BMW NA's explicit instructions, issued through service manuals, TSBs, and other documents. Per the agreements between BMW NA and its authorized dealers, consumers such as Plaintiff can receive services under BMW NA's issued warranties at dealer locations that are convenient to them. BMW NA has a nationwide dealership network and operates offices and facilities throughout the United States. BMW NA distributes parts and vehicles, which are then sold through its network of dealerships. Money received from the purchase of a BMW vehicle from a dealership flows from the dealer to BMW NA.

41. BMW of North America, LLC developed and disseminated the marketing materials to which Plaintiff and the Class were exposed, including owner's manuals, informational brochures, warranty booklets, and information included in maintenance recommendations and/or schedules for the Class Vehicles, and other promotional materials relating to the Class Vehicles, all of which fail to disclose the Defect.

42. BMW of North America, LLC distributed, marketed, sold, and warranted the Class Vehicles, including Plaintiff's vehicle, and participated in the dissemination of information concerning the design, performance, and repair of the Class Vehicles developed through BMW NA's own activities and its communications with BMW AG.

43. Defendant BMW AG is a German multinational corporation organized and existing under the laws of Germany and headquartered in Munich, Germany. BMW AG designs, engineers, manufactures, and distributes BMW-branded automobiles and component systems, including the powertrain and transmission systems at issue in this action. BMW AG is the direct and ultimate 100% parent company of BMW of North America, LLC and BMW Manufacturing Co., LLC—both U.S.-incorporated entities through which BMW AG conducts its American operations. The United States is BMW AG's second largest single market, representing approximately 16.3% of BMW AG's total

global sales in its 2024 fiscal year.[1] BMW AG has invested nearly $16 billion in its South Carolina operations, and its vehicles are sold through hundreds of authorized dealerships across the United States, including in California. Since 2014, BMW AG's South Carolina plant has exported more than $104 billion in vehicles and assembled more than 7 million.[2] BMW AG distributes roughly 50 percent of the vehicles assembled at the plant in the United States.[3]

44. BMW AG is responsible for the design, development, and manufacture of the Class Vehicles and their component systems, as well as the preparation of technical materials, including service information, diagnostic procedures, and engineering communications, that are disseminated to authorized dealerships through BMW of North America, LLC. BMW AG also develops and approves warranty policies, repair procedures, and defect-related communications applicable to the Class Vehicles.

45. BMW AG exercises substantial control over the operations of BMW of North America, LLC, including with respect to product design, engineering decisions, warranty administration, and the content of communications distributed to dealerships and consumers in the United States. BMW AG's control over these functions renders it directly involved in, and responsible for, the conduct alleged herein.

46. At all relevant times, BMW AG was and is engaged in the design, engineering, manufacture, and distribution of BMW-branded automobiles and motor vehicle components, including the Class Vehicles and their Powertrain and DCT Systems, and BMW NA was and is engaged in the importation, marketing, distribution, sale,

---

[1] BMW Automotive Group Global Performance Review, AUTODOC, https://www.autodoc.co.uk/info/bmw-automotive-group-global-performance-review (last visited May 18, 2026).

[2] BMW Manufacturing Continues as the Largest Automotive Exporter by Value in the U.S., BMW Group PressClub USA (Feb. 26, 2025) https://www.press.bmwgroup.com/usa/article/detail/T0448358EN_US/bmw-manufacturing-continues-as-the-largest-automotive-exporter-by-value-in-the-u-s?language=en_US (last visited May 18, 2026).

[3] *Id.*

warranty administration, and servicing of BMW-branded automobiles and motor vehicle components in California and throughout the United States.

## JURISDICTION

47. This is a class action.

48. Members of the proposed Class are citizens of states different from the home states of Defendant.

49. There are at least 100 members in the proposed class, and the aggregate claims of individual Class Members exceed $5,000,000.00 in value, exclusive of interest and costs.

50. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d) because minimal diversity exists, the proposed class exceeds 100 members, and the amount in controversy exceeds $5 million.

51. This Court has personal jurisdiction over Defendant BMW NA because it conducts substantial business in this District and discovery will show that significant conduct involving Defendant giving rise to the Complaint took place in this District.

52. This Court may exercise personal jurisdiction over BMW AG based on the jurisdictional allegations below and throughout this Complaint, including in THE PARTIES section above. The Court has specific jurisdiction over BMW AG pursuant to California's long-arm statute, Cal. Code Civ. Proc. § 410.10, based on BMW AG's extensive forum-related activities from which this action arises, and the forum-related activities of its primary domestic subsidiary, BMW of North America, LLC, which BMW AG substantially controls and to which Plaintiff's claims relate.

53. BMW AG designs and manufactures BMW-branded vehicles for distribution in the United States, including California, where BMW NA distributes and sells BMW-branded vehicles to consumers and businesses through hundreds of authorized dealerships (agents) in California.

54. BMW AG designs, manufactures, and supplies for distribution the Class Vehicles under its registered trademarks, including "BMW," "X1," and "X2." BMW AG

has applied for and secured scores of trademark registrations with the United States Patent and Trademark Office ("USPTO"), which maintains its principal headquarters in Alexandria, Virginia.[4] From the time the Class Vehicles were designed and marketed to the present, BMW AG purposefully availed itself of the United States' legal protections by registering and maintaining trademark registrations with the United States government for the trademarks associated with its vehicles and parts, which BMW AG uses to identify and distinguish its vehicles in the United States, including in this District.

55. BMW AG purposely availed itself of markets in the United States, designing and manufacturing vehicles for distribution and sale, including hundreds of thousands of BMW-branded vehicles per year through its domestic subsidiary, BMW of North America, LLC. In 2024, BMW of North America, LLC sold 371,346 BMW-branded vehicles in the United States—a second consecutive year of record U.S. sales.[5] The United States is one of BMW AG's largest single national markets, representing approximately 16.3% of BMW AG's total global sales in its 2024 fiscal year.[6]

56. Indeed, BMW AG has purposefully availed itself of the protections of the United States' legal system by filing lawsuits as a plaintiff in United States federal courts across the country, including in the United States District Courts for the Northern District of Illinois, the Eastern District of Michigan, the Central District of California, the District

---

[4] See USPTO Trademark Electronic Search System (TESS), available at https://tmsearch.uspto.gov (search for owner "Bayerische Motoren Werke Aktiengesellschaft") (reflecting numerous active U.S. trademark registrations owned by BMW AG) (last visited May 18, 2026).

[5] BMW of North America, LLC, BMW of North America Reports Q4 2024 U.S. Sales Results, Sets New Benchmarks for Annual Sales and BEV Sales (Jan. 3, 2025), available at https://www.press.bmwgroup.com/usa/article/detail/T0447290EN_US (last visited May 18, 2026).

[6] BMW AG, BMW Group Report 2024, Geographic Revenue Breakdown (published Mar. 2025) (reflecting net sales distributed geographically: United States 19%, Germany 13.9%, Europe 28.8%, China 22.3%), available at https://www.bmwgroup.com/en/report/2024/index.html (last visited May 18, 2026).

of New Jersey, and the Eastern District of Texas, and the District of Delaware.[7] By voluntarily invoking the jurisdiction of federal courts to enforce its own legal rights, BMW AG has repeatedly acknowledged its amenability to suit in the United States.

57. BMW AG is a global automobile manufacturer that purposely availed itself of the automobile and automobile-related products' markets in California designing and manufacturing vehicles, including the Class Vehicles, for distribution and sale in the United States, including California, and by participating in the development and approval of technical, repair, and defect-related communications applicable to those vehicles.. Those Class Vehicles were defective and otherwise violated California laws (as alleged herein) resulting in significant damages to Class Members in California.

58. BMW AG promotes, on its website www.bmwgroup.com directed to American consumers, investors, and business partners, its vehicles, its U.S. operations, and its domestic subsidiary BMW of North America, LLC. BMW AG controls the content of this website, maintaining it from Munich, Germany, and uses it to promote all vehicles sold by BMW of North America, LLC in the United States and to direct American consumers and business partners to information it publishes and controls. On this website, BMW AG highlights, "[w]ithin the US, you can find BMW Group facilities across the entire country, from National Sales Companies to our plant in Spartanburg . . ." It further identifies multiple divisions in the United States, including BMW Group Designworks, BMW Group Financial Services North America, BMW Group Technology Office, BMW Group Plant Spartanburg, and BMW Group North America.

59. As required by 49 U.S.C. § 30164 (and predecessor versions of that statute), BMW AG has, for many years, designated an agent "on whom service of notices and

---

[7] *See, e.g.*, *BMW of North America, LLC et al. v. Prime Market Targeting, Inc., et al.*, No. 1:11-cv-04095 (N.D. Ill.); *BMW of North America LLC et al. v. US Elogistics Service Corp., et al.*, No. 5:19-cv-00789 (C.D. Cal.); *BMW of North America, LLC et al. v. Iwas Properties, et al.*, No. 2:09-cv-14518 (E.D. Mich.); *Bayerische Motoren Werke AG et al. v. TurboSquid, Inc.*, No. 2:16-cv-02500 (D.N.J.); *Bayerische Motoren Werke AG et al. v. Arigna Technology*, No. 1:23-cv-01190 (D.D.C.).

process in administrative and judicial proceedings may be made … in writing" and "filed" that designation "with the Secretary of Transportation."[8] This designation is a legal prerequisite for BMW AG to offer its vehicles for importation and sale in the United States and reflects BMW AG's purposeful invocation of the benefits and protections of United States federal law.

60. BMW AG submits applications for Certificates of Conformity directly to the United States Environmental Protection Agency ("EPA") in its own corporate name as "Bayerische Motoren Werke AG." For example, BMW AG's Application for Certification for Model Year 2023 vehicles — which encompasses the Class Vehicles at issue in this action — identifies "Bayerische Motoren Werke AG, 80788 Munich, Germany" as the corporate name appearing on the Certificate of Conformity, with BMW AG engineers based in Munich serving as the responsible EPA certification contacts.[9] BMW AG has followed this same process in its interactions with the EPA for many years, conducting all testing and evaluation necessary to obtain Certificates of Conformity authorizing the sale of BMW-branded vehicles throughout the United States and in California.

61. BMW AG affixed federal safety certification labels to the Class Vehicles manufactured at its facilities in Germany, in each case knowing that they would be sold in the United States. The certification labels represented that the Class Vehicles conformed to U.S. federal safety standards, thereby enabling the vehicles to be sold in all 50 states, including California.

---

[8] 49 U.S.C. § 30164; 49 C.F.R. Part 551, Subpart D. As a foreign manufacturer offering motor vehicles for importation into the United States, BMW AG is required to designate a domestic agent for service of process and file that designation with the Secretary of Transportation before offering any vehicle for sale in the United States.

[9] Application for Certification, Common Section for Model Year 2023, Part 1, EPA Doc. No. 55202 (issued Dec. 1, 2021), at 5 (identifying "Bayerische Motoren Werke AG, 80788 Munich, Germany" as the corporate name on the Certificate of Conformity), available at https://dis.epa.gov/otaqpub/display_file.jsp?docid=55202&flag=1 (last visited May 18, 2026).

62. BMW AG owns and operates BMW Manufacturing Co., LLC, an assembly facility located in Spartanburg, South Carolina — the highest-production BMW plant in the world by volume.[10] The facility employs more than 11,000 people, assembles more than 1,500 vehicles per day, and in 2025 exported approximately $9 billion in vehicles to nearly 120 countries. BMW AG has invested more than $16 billion in this facility since 1992. BMW AG's direct manufacturing and employment activities in the United States demonstrate its purposeful and sustained availment of the U.S. market.

63. BMW AG and BMW of North America, LLC share common executives and BMW AG controls BMW of North America, LLC through formal and informal mechanisms, including corporate governance structures, officer appointment authority, and direct control over product design, engineering decisions, warranty policies, and customer-facing communications disseminated to dealerships and consumers in the United States. BMW AG played a key role in BMW of North America's analysis and decision-making relating to the Class Vehicles sold in the United States, including California.

64. BMW AG has established a unified quality management system for monitoring all warranty information, customer complaints, and quality issues arising from vehicles sold by its subsidiaries and distributors worldwide, including in the United States. BMW AG uses this system to gather, analyze, and act upon quality-related information from the United States market in real time. Through this system, BMW AG monitored and had actual knowledge of the Rollaway Defect and related consumer complaints well before Plaintiff purchased his Class Vehicle.

---

[10] BMW Group Plant Spartanburg, About BMW Manufacturing Co., LLC, available at https://www.bmwgroup-werke.com/spartanburg/en.html (last visited Apr. 14, 2026); *see also* BMW of North America, Reports Q4 2024 U.S. Sales Results (noting BMW Group has a nationwide corporate footprint including its manufacturing plant in Spartanburg, South Carolina).

65. For all the foregoing reasons, BMW AG has purposefully directed its activities at and availed itself of the California and United States markets in a systematic and ongoing manner. BMW AG — not its American subsidiary — designed the Class Vehicles for the U.S. market; BMW AG registered and owns U.S. trademarks under which these vehicles are marketed and sold; BMW AG applied for and obtained U.S. EPA emissions certifications in its own name; BMW AG submitted mandatory disclosures to NHTSA and designated a U.S. agent for service of process; BMW AG manufactures vehicles in the United States through its Spartanburg, South Carolina facility; and BMW AG ordered safety-related communications and service bulletins applicable to Class Vehicles sold in the United States. Plaintiff's claims arise out of and relate directly to BMW AG's design, engineering, manufacturing, certification, distribution, marketing, and warranty decisions as to the Class Vehicles.

## VENUE

66. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Plaintiff resides in Venice, Los Angeles, California, a substantial part of the events or omissions giving rise to the claims occurred in this District, and Defendants BMW of North America, LLC and BMW AG are subject to personal jurisdiction in this District and conduct substantial business within the State of California. Plaintiff's counsel's Declaration of Venue, to the extent required under California Civil Code section 1780(d), is attached hereto as **Exhibit 1**.

## FACTUAL ALLEGATIONS

67. BMW AG designed, engineered, and manufactured the Class Vehicles and their component systems, including the Powertrain and DCT Systems, while BMW NA imported, marketed, distributed, sold, and serviced the Class Vehicles in California and throughout the United States. BMW NA sold, directly or indirectly through authorized dealers and other retail outlets, thousands of Class Vehicles in California and nationwide and warrants and services the Class Vehicles through its nationwide network of authorized dealers and service providers. BMW AG and BMW NA jointly participate in

the development, approval, dissemination, and implementation of technical service bulletins, repair procedures, and other technical and defect-related communications concerning the Class Vehicles' Powertrain and DCT Systems.

68. The Class Vehicles are equipped with a turbocharged four-cylinder engine paired with a 7-speed dual-clutch transmission and integrated drivetrain control systems designed to manage clutch engagement, throttle input, and torque delivery during vehicle operation. These systems rely on coordinated mechanical, electrohydraulic, and software-controlled processes to deliver smooth and responsive acceleration, particularly during low-speed operation and initial takeoff.

69. In the Class Vehicles, this integrated Powertrain and DCT system has manifested in delayed acceleration, hesitation, loss of propulsion, erratic clutch engagement, and unintended vehicle movement, including rollaway conditions during low-speed operation and from a stop. Owners have reported that the vehicle may fail to respond to throttle input for several seconds, followed by sudden and harsh engagement of power, as well as uncontrolled rolling in the direction of a grade or opposite the selected gear. These conditions create a significant safety hazard in ordinary driving situations.

70. BMW AG and BMW NA have participated in promoting the superiority and class of their vehicles, particularly in the quality and safety of their engineering.

71. In terms of safety, BMW NA states that the X1 is a true leader in safety with the most advanced safety features and onboard driving technology.



72. BMW NA further highlights its "most advanced safety features. The BMW X1 comes standard with Active Driving Assistant, which includes multiple safety systems like Frontal Collision Warning with City Collision Mitigation, Lane Departure Warning, and Active Blind Spot Detection to provide extra protection for you and your passengers on the road."




73. BMW NA further claims that the X1 is "One step ahead. The BMW X1 goes above and beyond to keep you and your passengers protected with safety features including standard Active Blind Spot Detection, Frontal Collision Warning with City Collision Mitigation, and Lane Departure Warning." [11]

74. BMW's X1, "comes with xDrive, BMW's intelligent all-wheel drive system, equipped as standard. This technology powers all four wheels, and automatically counteracts slip in reduced traction areas for a more controlled driving experience."[12]

75. BMW's X1 is equipped with a 7-speed automatic dual clutch transmission on both X1 models, the M35i and xDrive28i.

---

[11] https://www.bmwusa.com/future-vehicles/x1-luxury-sav.html/1000 (last visited Mar. 30, 2026).

[12] https://www.bmwusa.com/vehicles/x-models/x1/suv/overview.html#performance (last visited Mar. 30, 2026).

> PERFORMANCE
>
> PACK A PUNCH
>
> A 2.0-liter BMW TwinPower Turbo inline 4-cylinder engine drives the BMW X1, turning out 241 horsepower. In the new X1 M35i, the 2.0-liter BMW M TwinPower Turbo inline 4-cylinder engine yields 313 horsepower. Shift smoothly with the 7-speed automatic dual clutch transmission, standard on both models.

76. BMW NA similarly markets and sells the BMW X2, including the X2 xDrive28i and X2 M35i, as a high-performance compact sport utility vehicle offering “impressive performance,” “brilliant technology,” and “state-of-the-art” features designed to enhance the driving experience.[13]

77. BMW NA represents that the X2 delivers responsive performance and driving dynamics through its integrated powertrain and drivetrain systems, including its dual-clutch transmission and xDrive all-wheel-drive system, which are intended to provide controlled and reliable vehicle operation under normal driving conditions.

78. Like the X1, the X2 is equipped with the same or substantially similar 7-speed dual-clutch transmission (“DCT”) and related drivetrain components, and suffers from the same Rollaway Defect, including delayed acceleration, hesitation, erratic clutch engagement, and unintended vehicle movement during low-speed operation and initial takeoff.

79. Discovery will show that the Class Vehicles share the same underlying powertrain, dual-clutch transmission, and related control systems that give rise to the Defect, rendering the Defect common across all Class Vehicles regardless of model or trim level.

80. Defendants have issued multiple SIBs addressing delayed acceleration, drivetrain hesitation, and transmission performance concerns including conditions arising during low-speed operation and initial acceleration. BMW AG and BMW NA

---

[13] https://www.bmwusa.com/vehicles/x-series/x2/bmw-x2-overview.html (last visited Mar. 30, 2026)

participated in the development, approval, dissemination, and/or implementation of these SIBs through their respective roles concerning technical and defect-related communications for the Class Vehicles. These communications acknowledge symptoms consistent with the Rollaway Defect while directing dealers to characterize such conditions as normal or not warrantable.

81. The SIB guidance provided to dealers has not corrected the underlying Rollaway Defect. Owners continue to experience delayed acceleration, erratic clutch engagement, and unintended vehicle movement despite repeated service visits and software updates.

82. Despite these continued failures, Defendants have not implemented a permanent repair that addresses the root cause of the Rollaway Defect. Instead, affected consumers are left with vehicles that remain unsafe to operate.

83. Discovery will show that the Rollaway Defect is caused by improper calibration and coordination between the engine, dual-clutch transmission, and related control systems, including deficiencies in software governing throttle input and clutch application, as well as irregular electrohydraulic actuation within the transmission system.

84. The Rollaway Defect is inherent in, and the same for, all Class Vehicles. Regardless of SIB-directed repairs or software updates, the same underlying issues persist, making it impossible for BMW NA and BMW AG to effectively repair affected vehicles without substantial redesign of the powertrain and dual-clutch transmission system.

85. BMW NA also offers extended warranty coverage for multi-coverage protection for seven years or 100,000 miles, whichever occurs first. This extended warranty coverage includes the transmission and all internal parts, clutch cover, seals and

gaskets, torque converter, transfer case (including all internal parts), transmission case, and transmission mounts.[14]




86. The levels of coverage include the Platinum or Powertrain Warranty.

87. Discovery will show that Defendants were aware of material facts regarding the Rollaway Defect but failed to disclose them to consumers. Internal documents, dealership service records, warranty data, and consumer complaints will confirm that BMW AG and BMW NA had knowledge of the Defect through their respective engineering, technical, warranty, dealer, field, and consumer information, as alleged herein, well before Plaintiff's and Class Members' purchases or leases.

**The Rollaway Defect Poses an Unreasonable Safety Hazard**

88. The Rollaway Defect poses an unreasonable safety hazard. The Defect causes delayed acceleration, unexpected jerking, throttle response issues, and uncontrolled rolling in the direction or opposite direction of the gear selected, creating an immediate risk of collision and injury.

89. Federal law requires automakers like Defendants to be in close contact with NHTSA regarding potential auto defects, including imposing a legal requirement (backed by criminal penalties) compelling the confidential disclosure of defects and related data

[14] https://www.bmwusa.com/financial-services/protection-program.html (last visited Mar. 30, 2026)

by automakers to NHTSA, including field reports, customer complaints, and warranty data. *See TREAD Act,* Pub. L. No. 106-414, 114 Stat.1800 (2000).

90. Automakers have a legal obligation to identify and report emerging safety-related defects to NHTSA under the Early Warning Report requirements. *Id.* Similarly, automakers monitor NHTSA databases for consumer complaints regarding their automobiles as part of their ongoing obligation to identify potential defects in their vehicles, including those which are safety related. *Id.* Thus, Defendants knew or should have known of the many complaints about the Rollaway Defect logged by NHTSA Office of Defects Investigation (ODI). The content, consistency, and disproportionate number of those complaints alerted, or should have alerted, Defendants to the Rollaway Defect.

**Defendants Had Knowledge of the Rollaway Defect Through Consumer Complaints**

91. With respect solely to the Class Vehicles, numerous complaints have been made to NHTSA, BMW dealerships, and through online forums by other BMW owners who have experienced the Rollaway Defect. These complaints include descriptions of the vehicle rolling unexpectedly while in gear (many times in the opposite direction), delays in acceleration, and sudden jerking movements. Despite these widespread reports, Defendants have not taken sufficient action to remedy the defect or to adequately inform consumers about the potential dangers associated with their vehicles before and after purchase. As a result, Class Members, like Plaintiff here, have been deprived of the safe and reliable transportation they were promised and have suffered financial loss, inconvenience, emotional distress, and safety concerns.

92. An examination of NHTSA complaints illustrates the Class Members' experiences with the Rollaway Defect and its potential danger (note that spelling and grammar mistakes remain as found in the original):

***2023 X1***

JUNE 30, 2023NHTSA CAMPAIGN NUMBER: 11529795
COMPONENT: POWER TRAIN, ENGINE
**NHTSA ID Number:** 11529795
**Incident Date:** May 17, 2023

**Consumer Location:** Unknown

**Vehicle Identification Number:** WBX73EF09P5******

**Summary of Complaint**

**Crash:NoFire:NoInjuries:0Deaths:0**
This report is for a 2023 BMW x1 with a dual clutch transmission. I was driving on a four lane road with a 35 mph speed limit and attempting to make a left turn. I was stopped at the light waiting the oncoming traffic to clear to make the left turn (from the left most of the two lanes). There was a significant delay in the car moving after pressing the accelerator allowing for the oncoming traffic to get within a dangerous range before the car finally moved. The car did make the left turn quickly, but the delay in initiating the turn was quite notable. The care was in the "Personal" drive mode and the auto hold function was not activated, nor was the auto off engaged when stopped. I don't use the paddle shifters and the car was in Drive. The engine was running when the accelerator was pressed. I have noticed this delay to accelerate at other times with the car is in first gear (moving from a slowed or stopped position), but I have not yet reported to the dealer (but have seen discussion of this issue on online owners forums). The delay doesn't happen when the car is moving or beyond first gear. Acceleration is not impacted once out of first gear.

OCTOBER 4, 2023NHTSA CAMPAIGN NUMBER: 11548211
COMPONENT: POWER TRAIN, ELECTRICAL SYSTEM

**NHTSA ID Number:** 11548211

**Incident Date:** April 1, 2023

**Consumer Location:** CARMEL VALLEY, CA

**Vehicle Identification Number:** WBX73EF01P5******

**Summary of Complaint**

**Crash:NoFire:NoInjuries:0Deaths:0**
Email sent to BMW describing a hesitancy or delay on acceleration from a dead stop: I have attached a link below to a blog from January, 2023, describing this problem on 2023 BMW X1; it includes a description of the issue on a video review of this car by Consumers Report. Apparently, this has not been corrected. My new 2023 X1 has this significant and dangerous problem. I was at the dealer service department for 2 1/2 hours this morning and they claimed not to be aware of the problem, although the technician did recognize the hesitancy. They also had no repair or correction from BMW. That is inexcusable. A second delay on accelerating from a stop making a turn onto or merging onto a highway, could result in a collision. I assume that BMW is waiting for enough reports of that happening before doing something about it. I am not interested in explanations or excuses. I

assume the it is due to the engine stop/start mechanism. I want it corrected. I am leaving on a road trip in 2 weeks and am afraid to take this car on the trip. I realize that if I turn off the stop/start mechanism on each startup or drive in Sport mode, and the hesitancy does not occur. That is not an acceptable alternative for a $58,000, BMW X1, especially for a recognized defect in the car's manufacture or software that has been known for at least 10 months. I need to have it fixed. [XXX] cc: California Department of Consumer Affairs INFORMATION REDACTED PURSUANT TO THE FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6)

OCTOBER 27, 2023NHTSA CAMPAIGN NUMBER: 11552243
COMPONENT: POWER TRAIN

**NHTSA ID Number:** 11552243

**Incident Date:** October 26, 2023

**Consumer Location:** CANYON COUNTRY, CA

**Vehicle Identification Number:** WBX73EF04P5******

**Summary of Complaint**

**Crash:NoFire:NoInjuries:0Deaths:0**
This vehicle has on numerous times has had delayed acceleration from a stop or rolling stop. The hesitation is random and unpredictable. The vehicle will be unresponsive for a second or two and then a surge of acceleration will jolt the vehicle forward. This causes an unsafe situation in which defensive maneuvering can be delayed. Accelerating from a stop sign or traffic light can become dangerous due to the significant lag between stepping on the gas pedal and the movement of the vehicle.

DECEMBER 12, 2023NHTSA CAMPAIGN NUMBER: 11559766
COMPONENT: FUEL/PROPULSION SYSTEM

**NHTSA ID Number:** 11559766

**Incident Date:** June 30, 2023

**Consumer Location:** UPPER BLACK EDDY, PA

**Vehicle Identification Number:** WBX73EF00P5******

**Summary of Complaint**

**Crash:NoFire:NoInjuries:0Deaths:0**
The car has a serious turbo lag. When I stepped on the gas it would take a few seconds for the car to move. I was very nervous driving it, as it was difficult to judge when I could enter or cross a stream of traffic safely. This is a serious safety issue. The dealership offered to come to my home with a loaner and have one of their employees accompany me while I drove the car to illustrate the issue. The person readily agreed several times there was an issue in the way the turbo or transmission was functioning. He loaded the car on the flatbread to the dealership and left me with a loaner. After checking

out the issue with my brand new car the dealer agreed it was a problem. They said they would check for a software update, which they did and installed it. They held it again overnight to test it the next day after the software update. The service manager advised that the software update did not fix the issue, and BMW told them that the car was designed to work that way. After hearing this I looked online for people with the same issue, and I readily found several examples including a person that regularly reviews new cars in video and said the turbo lag was dangerous and he would not be surprised if there was a recall in the future. How can the service department see a problem and the manufacturer say it was designed to work that way? If so, customer should be advised, hey when you step on the gas the car may not move for a few seconds!

DECEMBER 14, 2023NHTSA CAMPAIGN NUMBER: 11560050
COMPONENT: POWER TRAIN
**NHTSA ID Number:** 11560050

**Incident Date:** September 18, 2023

**Consumer Location:** CHARLOTTESVILLE, VA

**Vehicle Identification Number:** WBX73EF05P5******

**Summary of Complaint**

**Crash:NoFire:NoInjuries:0Deaths:0**
The contact owns a 2023 BMW X1. The contact stated that when the vehicle is on any slight incline, when parked, when the vehicle was placed in reverse (R) or in drive (D) the vehicle will roll backward or forward for about one or two feet before the vehicle responds to the accelerator pedal and the transmission gear selected. The contact stated no warning light was illuminated. The contact stated he would depress the brake pedal due to vehicle rolling in the opposite direction from which he intended and the vehicle would stop. The contact also stated that if the vehicle rolls back at any sort of speed, approximately 3 to 4 MPH, the vehicle automatic braking system would engage and stop the vehicle. The contact stated that the failure was intermittent but was occurring at every time the vehicle was parked on an incline. The contact had taken the vehicle to a local dealer, where it was scheduled for normal service and software updates. The contact stated that a software update to remedy "drive off characteristics" and "throttle input lag" was installed, however the roll away failure was still occurring. The vehicle was not repaired. The manufacturer was not informed of the failure. The failure mileage was approximately 500.

JULY 11, 2024NHTSA CAMPAIGN NUMBER: 11601283
COMPONENT: POWER TRAIN, ELECTRICAL SYSTEM
**NHTSA ID Number:** 11601283

**Incident Date:** July 11, 2024

**Consumer Location:** SPARKS, NV

**Vehicle Identification Number:** WBX73EF07P5******

**Summary of Complaint**

**Crash:YesFire:NoInjuries:0Deaths:0**
The vehicle is equipped with a dual clutch transmission and has the EPA mandated auto-start feature. When you stop the vehicle and the engine shuts off and then remove your foot from the brake to go forward, the engine hesitates to restart and then starts, revs, dumps the clutch and propels you forward at a dangerous rate. My wife was trying to pull into the garage and stopped a little short. When she tried to move forward about a foot, the car started and lurched forward hitting the house. There is no way to disable the auto start feature and there are no buttons in the car. This is going to get someone killed when they are trying to make a left turn across traffic and first the car doesn't restart and then it starts and flies into traffic. I complained to BMW and they say this is the way the government mandates the car to be.

***2024 X1***

MARCH 16, 2024NHTSA CAMPAIGN NUMBER: 11577781
COMPONENT: POWER TRAIN

**NHTSA ID Number:** 11577781

**Incident Date:** March 1, 2024

**Consumer Location:** REDONDO BEACH, CA

**Vehicle Identification Number:** WBX13EF07R5******

**Summary of Complaint**

**Crash:NoFire:NoInjuries:0Deaths:0**
The auto start/stop on this car is super slow and will turn off the engine before the car comes to a complete stop. It causes confusion at intersections because of the slow getaway and has nearly caused several collisions. For instance, last week I was turning left at an intersection. The left turn was a yield, so i am turning across oncoming traffic. This is the usual intersection in my city. I did not come to a complete stop and started to turn left. I left plenty of space to the oncoming traffic. To my surprise, the engine had turned off and I sat in the intersection pressing the gas pedal to no power. I essentially coasted most of the way through the intersection before the power came back. By that point, I was pushing the gas so hard that when the engine started, I nearly lost control because of the sudden jolt of acceleration while turning. This has happened multiple times and puts drivers of the X1 and others at risk. I've owned and driven hundreds of cars with auto start/stop and this has to be the worst by far. I cannot understand why the engine will turn off before the car comes to a stop. This is more typical of a mild-hybrid drivetrain, except this car does not have an electric

engine. It happens with no consistency, so there's no way to adapt driving style. There is only one way to disable the start/stop, and it's deep within the menus (several button clicks on a touch screen-only display), and then it only disables it for the current trip. The dealer has mentioned it's not great but has no way to fix as it's a software problem. Zero warning lamps.

JULY 26, 2024NHTSA CAMPAIGN NUMBER: 11604772
COMPONENT: STEERING, SERVICE BRAKES, FORWARD COLLISION AVOIDANCE

**NHTSA ID Number:** 11604772

**Incident Date:** July 24, 2024

**Consumer Location:** REDMOND, OR

**Vehicle Identification Number:** WBX73EF09R5******

**Summary of Complaint**

**Crash:NoFire:NoInjuries:0Deaths:0**
Traveling about 35mph with no cars around, the brakes applied, no throttle response, and little steering. Warning lights illuminated and couldn't move car until turned off ignition and restarted. Dealer showed no codes and shows no record of it occurring. This symptom mirrors a recall on last years model, but not yet on 2024's. BMW says there's nothing more they can do but we are afraid to drive car because it's a guaranteed accident waiting to happen.

AUGUST 4, 2024NHTSA CAMPAIGN NUMBER: 11606349
COMPONENT: UNKNOWN OR OTHER, ENGINE

**NHTSA ID Number:** 11606349

**Incident Date:** August 1, 2024

**Consumer Location:** REDONDO BEACH, CA

**Vehicle Identification Number:** WBX13EF07R5******

**Summary of Complaint**

**Crash:NoFire:NoInjuries:0Deaths:0**
The auto start software will turn the engine off when the car is still rolling. I can be rolling 2-4 MPH and the engine will just turn off. There's a huge delay after the engine restarts for power to continue. There is no way to permanently turn off this feature. If you are making a left turn across traffic you can be in a situation where the car will allow you to roll into oncoming traffic with the engine off. And as you press the gas nothing happens. It happens randomly so there's no way to "learn" how the car behaves and anticipate it. In addition when the engine power does resume, it jolts forward and is sudden. The dealer has said there is nothing they can do as it's BMW USA software. There's no warning and no way to know that the engine is off.

The software will only tell you when the car is at a full stop. Even then, the only indication is the small “ready” words. This is very easily reproducible by driving through several stop signs in personal mode.

JANUARY 8, 2026NHTSA CAMPAIGN NUMBER: 11709771
COMPONENT: POWER TRAIN
**NHTSA ID Number:** 11709771
**Incident Date:** December 24, 2025
**Consumer Location:** BOLINGBROOK, IL
**Vehicle Identification Number:** WBX73EF00R5******
**Summary of Complaint**
**Crash:NoFire:NoInjuries:0Deaths:0**
Our X1 has a lot of "slip" in the transmission. It's most apparent when you back up and then switch to drive. In our X1, the car keeps rolling backward like it's in neutral. Drive doesn't engage until after a long delay.

***2025 X1***

SEPTEMBER 18, 2025NHTSA CAMPAIGN NUMBER: 11688060
COMPONENT: POWER TRAIN
**NHTSA ID Number:** 11688060
**Incident Date:** September 13, 2025
**Consumer Location:** PORTLAND, ME
**Vehicle Identification Number:** N/A
**Summary of Complaint**
**Crash:NoFire:NoInjuries:0Deaths:0**
The contact owns a 2025 BMW 1X. The contact stated while at an ATM, the vehicle was shifted into drive(D), but the vehicle unintendedly shifted into park(P) and failed to move. There were no warning lights illuminated. The contact stated that the failure had occurred in an enclosed area. The contact was unable to exit the vehicle. The contact continued to restart the vehicle. The Police was contacted for assistance. The vehicle was released approximately 10 minutes later. While exiting the vehicle, the alarm engaged. The local dealer was contacted, and an unknown diagnosis was provided. The vehicle was not repaired. The dealer tested a BMW X2 where the failure was duplicated. The manufacturer was contacted, but no assistance was provided. The failure mileage was approximately 4,300. The VIN was not available.

JANUARY 22, 2026NHTSA CAMPAIGN NUMBER: 11712606
COMPONENT: POWER TRAIN, ELECTRICAL SYSTEM, ENGINE

**NHTSA ID Number:** 11712606
**Incident Date:** December 4, 2025
**Consumer Location:** WILLIAMSPORT, PA
**Vehicle Identification Number:** WBX73EF01S5******
**Summary of Complaint**
**Crash:NoFire:NoInjuries:0Deaths:0**
Today is 1/21/26. My car has had problems since 12/4/25 when I started getting drivetrain warning lights. After "call roadside assistance" prompts, it will start, but a drivetrain fault appears on the dash. Many faults have appeared at the dealer and I have it in writing that there is nothing more they can do. They escalated the issue to BMW with no resolution, to date. I have requested a buy-back and they no longer return my calls. In terms of safety, I'm not sure what could happen if the drivetrain fault light is on. On three separate occasions, it told me that the car was in danger of rolling over when I was on a flat surface. Another time, the car wouldn't go over 30 mph. This didn't feel safe! The dealer has reloaded software many times. Once they said I could pick it up and when I started it to drive home, the fault light appeared. They said other cars have come in for similar issues, but the software update has solved the problem. They said they have never seen anything like this before. As far as I know, other than the local dealer, all other BMW inspections have been done remotely. Documentation of what as happened every day is attached. I also have the back-and-forth correspondence with the dealer and with BMW North America if needed.

93. Similarly, complaints posted by consumers in internet forums and consumer review platforms demonstrate that the Rollaway Defect is widespread and dangerous and that it can manifest without warning and/or suitable repair. The complaints also indicate Defendants' awareness of the problems with the Powertrain and DCT Systems and how potentially dangerous the Defect is for consumers.

94. Defendants monitor third-party consumer websites, online forums, social-media groups, and public discussion boards where owners report vehicle problems. Automotive manufacturers and distributors, including BMW NA and BMW AG, routinely track such publicly available complaint data as part of their quality-control, warranty-trend, and product-safety monitoring practices. Accordingly, Defendants knew or should have known of the widespread complaints concerning delayed acceleration,

erratic clutch engagement, sudden jerking, and loss of power reported by owners on these platforms well before Plaintiff purchased his vehicle.

95. For example, in a public discussion on Reddit titled "BMW X1 xDrive28i 2025 Any Real-World Experience?," user "YitzhakRobinson" reported approximately one year ago that their BMW X1 had "incredibly slow throttle response" that made driving the vehicle "feel unsafe when trying to change lanes at highway speeds." The user further reported that the vehicle had been taken to the dealership "over 5 times," but the condition remained unresolved.[15]

96. In another Reddit discussion titled "BMW X1 2023 Total disaster," user "realityinflux" reported approximately one year ago that the transmission in a used 2023 BMW X1 "slips, thumps and jerks on takeoff," and further explained that the vehicle would "rev[], then a violent jerk and clunk as the transmission finally goes into gear." The user stated that the condition would happen repeatedly and unexpectedly during normal driving and caused concern that it would eventually damage the vehicle.[16]

97. Similarly, in a forum discussion titled "U11 Gearbox Failure after 3k miles!," user "Michelangelo" reported on August 6, 2025 that their 2024 BMW X1 suffered a "catastrophic failure of the gearbox after just 3k miles," and that, when "pulling away at a junction," the vehicle "almost completely lost power," made a "horrendous noise," and came to a grinding halt, ultimately requiring a complete gearbox replacement.

98. The same user further reported that, even after replacement of the gearbox, the vehicle still did not feel right and exhibited abnormal low-speed behavior, including "hunting" and "noticeably aggressive" and "clunky" gear changes during pull-away and low-speed operation.

---

[15] Reddit – "BMW X1 xDrive28i 2025 Any Real-World Experience?" https://www.reddit.com/r/BMW/comments/1jl46ha/bmw_x1_xdrive28i_2025_any_real world_experience/ (last visited Mar. 30, 2026)

[16] Reddit – "BMW X1 2023 Total Disaster" https://www.reddit.com/r/BMW/comments/1g66nri/bmw_x1_2023_total_disaster/ (last visited Mar. 30, 2026)

99. Another participant in the same discussion, user "Graemeb2812," similarly reported on August 7, 2025 that the vehicle "pulls away in 2nd gear a lot, giving a sensation of lacking power and responsiveness at times," further reflecting delayed or abnormal initial acceleration.[17]

100. In another online forum discussion dated December 5, 2023, titled "Serious error messages, or was it a glitch?," user "Duncs1961" reported that their BMW X1 displayed warnings including "Not possible to select R" and "Drive carefully. Drivetrain fault," and exhibited abnormal transmission behavior, including skipping gears while driving. The user later reported that the vehicle was diagnosed as having a "serious transmission fault" requiring removal of the engine and gearbox for repair.

101. Another user in the same discussion, "lildumplinx1," reported on December 5, 2023 that they "had a whole new transmission put in after spending 65 days in the shop for the same issue," and that the transmission-related errors would temporarily disappear after restart but continued to recur.[18]

102. In consumer reviews published on Cars.com, on July 23, 2023, a reviewer identified as "Brett" from Houston, Texas reported that the vehicle's "acceleration AFTER it comes on is hesitant," referring to acceleration after the engine auto shut-off function re-engaged.

103. On April 27, 2023, a reviewer identified as "Tan Nguyen" from San Antonio, Texas reported a "bad transition from autoshut off" and stated that the car "doesnt feel smooth when reignite the engine," and instead "always feel[s] like bumpy on the road."

---

[17] Bimmerpost Forum – "U11 Gearbox Failure after 3k miles!" https://u11.bimmerpost.com/forums/showthread.php?t=2198992 (last visited Mar. 30, 2026)

[18] Bimmerpost Forum – "Serious error messages, or was it a glitch?" https://u11.bimmerpost.com/forums/showthread.php?t=2066334 (last visited Mar. 30, 2026

104. On April 6, 2023, a reviewer identified as "JS1" from Palm Springs, California stated that, although the vehicle used a dual-clutch transmission, "smooth take off ain't one of 'em," reflecting irregular and unsmooth engagement during initial acceleration.[19]

105. These consumer complaints, spanning multiple independent sources and time periods, consistently describe delayed or insufficient acceleration, erratic clutch engagement, sudden jerking, drivetrain malfunction, and unpredictable vehicle response during low-speed operation and initial acceleration, all of which are consistent with the Rollaway Defect.

**Defendants Had Superior and Exclusive Knowledge of the Rollaway Defect**

106. Defendants had superior and exclusive knowledge of the Rollaway Defect and knew or should have known that the Defect was not known or reasonably discoverable by Plaintiff and Class Members before they purchased or leased the Class Vehicles. As alleged herein, BMW AG possessed design, engineering, development, testing, and technical information concerning the Class Vehicles and their Powertrain and DCT Systems, while BMW NA possessed warranty, dealer, field, and consumer information concerning the Class Vehicles. BMW AG and BMW NA also acquired and shared defect-related information through their respective roles concerning technical communications, repair guidance, and service procedures for the Class Vehicles.

107. Discovery will show that, before Plaintiff purchased his Class Vehicle, and since at least 2022, Defendants knew about the Rollaway Defect through sources not available to consumers, including pre-release testing and engineering data available to BMW AG; early consumer complaints to BMW NA and its authorized dealers, who are BMW NA's agents for vehicle repairs; consumer complaints concerning vehicles equipped with the same or substantially similar Powertrain and DCT Systems; testing

[19] Cars.com – "2023 BMW X1 Consumer Reviews" https://www.cars.com/research/bmw-x1-2023/consumer-reviews/(last visited Mar. 30, 2026)

conducted in response to reported problems; failure rate and replacement part sales data; consumer complaints to NHTSA; aggregate dealer and warranty data; and the development, approval, dissemination, and implementation by BMW AG and BMW NA of TSBs and other technical communications addressing the Rollaway Defect.

108. BMW AG is experienced in the design and manufacture of consumer vehicles. BMW AG conducts testing, including pre-sale durability testing, concerning components and systems used in its vehicles, including the Powertrain and DCT Systems, to verify that they are free from defect and conform to applicable specifications. BMW NA separately receives and analyzes information concerning vehicle performance through its warranty, dealer, customer relations, and field functions. Thus, Defendants knew or should have known the Powertrain and DCT Systems were defective and prone to put drivers in a dangerous position due to the inherent risks of the Rollaway Defect.

109. Additionally, discovery will show that Defendants knew of the impact of this defect from the sheer number of reports received from dealerships. BMW NA's customer relations department, which interacts with individual dealerships to identify potential common defects, has received numerous reports regarding the Defect, which led to repeated internal communications between and among BMW NA, BMW AG, and authorized dealerships, and TSBs addressing inability to accelerate (or delayed acceleration), sudden jerking of the vehicle, and the vehicle uncontrollably rolling on a hill or grade. BMW NA's customer relations department also collects and analyzes field data including, but not limited to, repair requests made at dealerships, technical reports prepared by engineers who have reviewed vehicles for which warranty coverage is being requested, parts sales reports, and warranty claims data.

110. BMW NA's warranty department similarly analyzes and collects data submitted by its dealerships to identify warranty trends in its vehicles. It is BMW NA's policy that when a repair is made under warranty the dealership must provide BMW NA with detailed documentation of the problem and a complete disclosure of the repairs employed to correct it. Dealerships have an incentive to provide detailed information to

BMW NA, because they will not be reimbursed for any repairs unless the justification for reimbursement is sufficiently detailed. BMW NA also communicates warranty, field, and defect-related information concerning the Class Vehicles to BMW AG in connection with the entities' respective roles in investigating vehicle performance and developing technical and repair guidance.

111. Well before the first Class Vehicle was sold, and as early as 2022, if not earlier, Defendants knew or should have known that the Powertrain and DCT Systems were defective in design and manufacture and that the Rollaway Defect would adversely affect drivability and safety. The transmission system at issue includes BMW's 7-speed dual-clutch transmission ("M-DCT") and related drivetrain components deployed in the U11 X1 platform and other BMW vehicles utilizing similar transverse powertrain architecture. This transmission system was developed, validated, and integrated into BMW AG's vehicle platforms prior to the release of the Class Vehicles. Pre-production design, validation, and testing, as well as internal engineering reviews conducted by BMW AG prior to and during the launch of the U11 platform, revealed abnormal drivetrain behavior, including delayed acceleration from a stop, hesitation during engagement, improper clutch actuation, and inconsistent transmission response under normal operating conditions.

112. By the time the Class Vehicles were offered for sale, BMW AG's testing and engineering information and BMW NA's field, dealer, and warranty information reflected repeated complaints and repair attempts relating to delayed takeoff, drivetrain hesitation, and abnormal transmission behavior at low mileage. Defendants' own service publications, including the SIBs described herein, confirm that they were aware of delayed acceleration, drivetrain abnormalities, transmission disengagement conditions, and related issues in these vehicles well before and after they reached the market.

113. The service communications and Technical Service Bulletins ("SIBs") developed, approved, disseminated, and implemented through BMW AG's and BMW NA's respective roles corroborate the foregoing and show their knowledge of delayed

acceleration, drivetrain abnormalities, transmission disengagement conditions, and related issues in the Class Vehicles, including:

(a) SIB 28 01 23 (August 10, 2023; revised March 21, 2025): Applicable to U11 (X1) and U10 (X2) vehicles equipped with the 7-speed M-DCT transmission. This bulletin addresses a check control message stating "Emergency gearbox release activated" immediately after engine start. BMW attributes the condition to software interactions during the vehicle's "drive-ready state," in which conflicting neutral and reverse signals may be registered by the transmission control system. BMW instructs that no further action is required if no faults are stored and directs dealers to explain the condition to customers. In its later revision, BMW further characterizes the condition as potentially caused by "accidental emergency release by customers" while continuing to prescribe software programming updates.

(b) SIB 12 07 23 (November 17, 2023): Applicable to U11 vehicles. This bulletin acknowledges that the vehicle "exhibits a slight acceleration delay when taking off from a MSA (automatic engine start-stop function) stop." BMW attributes the condition to DME software calibration and prescribes staged software updates to improve "driving off characteristics," including a second-stage update to be implemented in a future software release.

(c) SIB 28 02 24 (May 23, 2024; revised December 20, 2024): Applicable to U11 (X1) and U10 (X2) vehicles equipped with the dual-clutch transmission. This bulletin identifies that micro-movements combined with frictional corrosion can increase wear at the connection between the double-clutch transmission and transfer case. BMW directs installation of spacers at the interface between the DCT and transfer case to reduce movement and wear, reflecting a mechanical condition affecting drivetrain integrity and transmission operation.

114. The existence of the Rollaway Defect is a material fact that a reasonable consumer would consider when deciding whether to purchase or lease a Class Vehicle.

Had Plaintiff and other Class Members known of the Rollaway Defect, they would have paid less for the Class Vehicles or would not have purchased or leased them.

115. Reasonable consumers, like Plaintiff, expect that a vehicle's powertrain will be controllable, safe, will function in a manner that will not pose a safety risk, and will be free from defects. Plaintiff and Class Members further reasonably expect that Defendants will not sell or lease vehicles with known safety defects, such as the Rollaway Defect, and will disclose any such defects to its consumers when they learn of them. They did not expect Defendants to conceal and fail to disclose the Rollaway Defect to them, and to then continually deny its existence.

**Defendants Actively Concealed the Rollaway Defect**

116. Despite their knowledge of the Rollaway Defect in the Class Vehicles, Defendants actively concealed the existence and nature of the Defect from Plaintiff and Class Members. Specifically, Defendants failed to disclose or actively concealed at and after the time of purchase, lease, or repair:

(a) any and all known material defects or material nonconformity of the Class Vehicles, including the defects pertaining to the Powertrain and DCT Systems;

(b) that the Class Vehicles, including the Powertrain and DCT Systems, were not in good working order, were defective, and were not fit for their intended purposes; and

(c) that the Class Vehicles and their Powertrain and DCT Systems were defective, despite the fact that BMW AG and BMW NA learned of such defects as early as 2023.

These concealments occurred notwithstanding Defendants' internal documentation acknowledged "acceleration behavior from stand-still or slow speeds does not meet customer expectation," and "Drive-off from stop unfavorable."

117. Discovery will show that when consumers present their Class Vehicles to an authorized BMW NA dealer for Powertrain and DCT System repairs, diagnostic

protocols and repair guidance developed and implemented through BMW AG's and BMW NA's respective roles direct technicians to treat delayed acceleration as "normal operating characteristics." Dealers are instructed to inform the consumer the vehicle is operating as designed, thereby concealing the underlying defect.

118. Defendants have caused Plaintiff and Class Members to expend money and/or time at its dealerships to diagnose, repair or replace the Class Vehicles' Powertrain and DCT Systems and/or related components, despite Defendants' knowledge of the Rollaway Defect.

**Defendants Have Unjustly Retained a Substantial Benefit**

119. Discovery will show that Defendants unlawfully failed to disclose the alleged defect to induce Plaintiff and other putative Class Members to purchase or lease the Class Vehicles.

120. Plaintiff further alleges that Defendants thus engaged in deceptive acts or practices pertaining to all transactions involving the Class Vehicles, including Plaintiff's.

121. As discussed above, therefore, Plaintiff alleges that Defendants unlawfully induced him to purchase his Class Vehicle by concealing a material fact (the defective Powertrain and DCT Systems) and that he would have paid less for the Class Vehicle, or not purchased it at all, had he known of the Defect.

122. Accordingly, Defendants' ill-gotten gains, benefits accrued in the form of increased sales and profits resulting from the material omissions that did – and likely will continue to – deceive consumers, should be disgorged.

**BMW Authorized Dealers Are Defendants' Agents**

123. In promoting, selling, and repairing its defective vehicles, BMW NA acts through numerous authorized dealers who act as, and represent themselves to the public as, exclusive BMW NA representatives and agents. That the dealers act as BMW NA's agents is demonstrated by the following facts:

(a) The authorized BMW NA dealerships complete all service and repair according to BMW's instructions, which BMW NA issues to its

authorized dealerships through service manuals, technical service bulletins ("TSBs"), technical tips ("TT"), and other documents;

(b) Technicians at BMW NA dealerships are required to go to at least yearly BMW NA-given trainings in order to remain certified to work on BMW-branded vehicles, at which they receive training on proprietary systems, which provides guided, step-by- step instructions on diagnosing and repairing BMW-branded vehicles;

(c) Consumers are able to receive services under BMW NA's issued NVLW and PW only at BMW NA's authorized dealerships, and they are able to receive these services because of the agreements between BMW NA and the authorized dealers. These agreements provide BMW NA with a significant amount of control over the actions of the authorized dealerships;

(d) The warranties provided by BMW NA for the defective vehicles direct consumers to take their vehicles to authorized dealerships for repairs or services;

(e) BMW NA dictates the nature and terms of the purchase contracts entered into between its authorized dealers and consumers;

(f) BMW NA controls the way in which its authorized dealers can respond to complaints and inquiries concerning defective vehicles, and the dealerships are able to perform repairs under warranty only with BMW's authorization;

(g) BMW NA has entered into agreements and understandings with its authorized dealers pursuant to which it authorizes and exercises substantial control over the operations of its dealers and the dealers' interaction with the public, particularly the advertising; and

(h) BMW NA implemented its express and implied warranties as they relate to the defects alleged herein by instructing authorized BMW dealerships to address complaints of the Defect.

124. Indeed, BMW NA's 2023 BMW X1 warranty booklets make it abundantly clear that BMW NA's authorized dealerships are its agents for vehicle sales and service. The booklets, which are plainly written for the consumers, not the dealerships, tell the consumers that "BMW limited warranties… cover eligible warranty repair or replacement work when the warranty service is performed at an authorized BMW center in the United States."

125. Accordingly, as the above paragraphs demonstrate, the authorized dealerships are agents of BMW NA. Plaintiff and each of the members of the Class have had sufficient direct dealings with either BMW NA or its agent dealerships to establish privity of contract between Defendants, including BMW of North America, LLC acting as the authorized distributor and warranty administrator for BMW AG, on one hand, and Plaintiff and each of the members of the Class, on the other hand. This establishes privity with respect to the express and implied warranty between Plaintiff and Defendants, including BMW of North America, LLC acting as the authorized distributor and warranty administrator for BMW AG. It also establishes that Plaintiff was dealing with BMW NA through its authorized agent dealerships when he was given the NVLW and PW associated with the Class Vehicle, without any ability to negotiate the terms of such warranties.

**Defendants' Warranties Were Unconscionable**

126. Plaintiff signed a contract for sale with a BMW authorized dealer, and with that sale, was presented with the terms of the Warranty as drafted and implemented by Defendants, including BMW of North America, LLC acting as the authorized distributor and warranty administrator for BMW AG. While Plaintiff has some ability to negotiate the price of the vehicle, he has no ability to negotiate the terms of the Warranty. Plaintiff had no bargaining power with respect to the Warranty, was presented with it as a fait accompli, and had to accept it in the exact form in which it was presented to him, which occurred after the vehicle purchase transaction was completed. Plaintiff had no meaningful choice regarding any aspect of the Warranty or its terms, including durational

limitations of time and mileage. The terms of the Warranty unreasonably favored Defendants over Plaintiff and the members of the Class; a gross disparity in bargaining power existed as between Defendants and Class members; and Defendants knew or should have known that the Rollaway Defect would manifest in the Class Vehicles both before and after the Warranty, thereby rendering the time and mileage limitations insufficient, inadequate, and unconscionable.

127. Defendants drafted and implemented the terms of the Warranty in part by using their exclusive, superior knowledge of the existence and likely manifestation of the Defect. Plaintiff and Class Members were entirely ignorant of the Defect when purchasing their Vehicles and when presented with the Warranty. Plaintiff's acceptance of the Warranty and its terms, including any disclaimers or durational limits, was neither knowing nor voluntary. Defendants knew or should have known at the time of sale that the Class Vehicles were defective and would fail prematurely solely because of a defect in design, materials, and workmanship, to wit, the Rollaway Defect. Plaintiff and Class Members, on the other hand, had no notice of or ability to detect the Defect prior to purchasing the Class Vehicles. For this reason, the terms of the Warranty unreasonably favored Defendants over Plaintiff and Class Members, and Plaintiff's and Class Members' acceptance of the Warranty's durational limitations, to the extent they are found to apply so as to exclude instances where the Defect manifested outside of them, was neither knowing nor voluntary, thereby rendering such limitation unconscionable and ineffective.

128. Plaintiff was also not aware and could not have been aware that Defendants would fail to disclose the Defect, which affects the safety of his vehicle, and that the Defect could manifest outside of the durational limits of the Warranty, despite Defendants' knowledge of this. *See Carlson v. Gen. Motors Corp*., 883 F.2d 287 (4th Cir. 1989), cert. denied, 495 U.S. 904 (1990) ("[P]roof that [defendant] knew of and failed to disclose major, inherent product defects would obviously suggest that its imposition of the challenged 'durational limitations' on implied warranties constituted 'overreaching,' and that the disclaimers themselves were therefore 'unconscionable.")

## TOLLING OF THE STATUTES OF LIMITATIONS

129. Any applicable statute of limitations has been tolled by Defendants' knowing and active concealment of the Rollaway Defect and misrepresentations and omissions alleged herein. Through no fault or lack of diligence, Plaintiff and members of the Class were deceived regarding the Class Vehicles and could not reasonably discover the Defect or Defendants' deception with respect to the Defect. BMW and its agents continue to deny the existence and extent of the Defect, even when questioned by Plaintiff and members of the Class.

130. Plaintiff and members of the Class did not discover and did not know of any facts that would have caused a reasonable person to suspect that Defendants were concealing a defect and/or the Class Vehicles contained the Rollaway Defect and the corresponding safety risk. As alleged herein, the existence of the Rollaway Defect was material to Plaintiff and members of the Class at all relevant times. Within the time period of any applicable statutes of limitations, Plaintiff and members of the Class could not have discovered through the exercise of reasonable diligence the existence of the Defect or that the Defendants were concealing the Defect.

131. At all relevant times, Defendants, including BMW AG and BMW of North America, LLC, were under a continuous duty to disclose to Plaintiff and members of the Class the true standard, quality, and grade of the Class Vehicles and to disclose the Rollaway Defect and corresponding safety risks due to their exclusive and superior knowledge of the existence and extent of the Defect in the Class Vehicles' Powertrain and DCT systems.

132. Defendants knowingly, actively, and affirmatively concealed the material facts alleged herein. Plaintiff and members of the Class reasonably relied on Defendants' knowing, active, and affirmative concealment.

133. For these reasons, all applicable statutes of limitation have been tolled based on the discovery rule and Defendants' fraudulent concealment, and Defendants are estopped from relying on any statutes of limitations in defense of this action.

## CLASS ACTION ALLEGATIONS

134. Plaintiff brings this lawsuit as a class action on behalf of himself and all others similarly situated as members of the proposed Class pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

135. The Class and Sub-Classes are defined as:

> **<u>Class</u>:** All persons and entities in the United States who purchased or leased a Class Vehicle (the "Nationwide Class" or "Class").
>
> **<u>California Sub-Class</u>:** All members of the Nationwide Class who reside in the State of California.
>
> **<u>CLRA Sub-Class</u>**: All members of the California Sub-Class who are "consumers" within the meaning of California Civil Code § 1761(d) and who purchased or leased their Class Vehicles primarily for personal, family, or household use.
>
> **<u>Implied Warranty Sub-Class</u>**: All members of the Nationwide Class who purchased or leased their vehicles in the State of California.

136. Excluded from the Class and Sub-Classes are: (1) Defendants, any entity or division in which Defendants have a controlling interest, and their legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; (3) any Judge sitting in the presiding state and/or federal court system who may hear an appeal of any judgment entered; and (4) those persons who have suffered personal injuries as a result of the facts alleged herein. Plaintiff reserves the right to amend the Class and Sub-Class definitions if discovery and further investigation reveal that the Class and Sub- Classes should be expanded or otherwise modified.

137. <u>Numerosity</u>: Although the exact number of Class Members is uncertain, and can only be ascertained through appropriate discovery, the number is significant enough

such that joinder is impracticable. The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court. The Class Members are readily identifiable from information and records in Defendants' possession, custody, or control, as well as from records kept by the Department of Motor Vehicles.

138. Typicality: Plaintiff's claims are typical of the claims of the Class in that Plaintiff, like all Class Members, purchased or leased a Class Vehicle designed and manufactured by BMW AG and imported, marketed, distributed, sold, and warranted in the United States by BMW NA. The representative Plaintiff, like all Class Members, has been damaged by Defendants' misconduct in that he has incurred or will incur the cost of repairing or replacing the defective Powertrain and DCT Systems and/or its components. Furthermore, the factual bases of Defendants' misconduct are common to all Class Members and represent a common thread resulting in injury to the Class.

139. Commonality: There are numerous questions of law and fact common to Plaintiff and the Class that predominate over any question affecting Class Members individually. These common legal and factual issues include the following:

(a) Whether Class Vehicles suffer from defects relating to the Powertrain and DCT Systems;

(b) Whether the defects relating to the Powertrain and DCT Systems constitute an unreasonable safety risk;

(c) Whether Defendants knew about the defects pertaining to the Powertrain and DCT Systems and, if so, how long Defendants have known of the Defect;

(d) Whether the defective nature of the Powertrain and DCT Systems constitutes a material fact;

(e) Whether Defendants have had an ongoing duty to disclose the defective nature of the Powertrain and DCT Systems to Plaintiff and Class Members;

(f) Whether Plaintiff and the other Class Members are entitled to equitable relief, including a preliminary and/or a permanent injunction;

(g) Whether Defendants knew or reasonably should have known of the defects pertaining to the Powertrain and DCT Systems before the Class Vehicles were sold or leased to Class Members;

(h) Whether Defendants should be declared financially responsible for notifying the Class Members of problems with the Class Vehicles and for the costs and expenses of repairing and replacing the defective Powertrain and DCT Systems and/or its components;

(i) Whether Defendants are obligated to inform Class Members of their right to seek reimbursement for having paid to diagnose, repair, or replace their defective Powertrain and DCT Systems and/or its components;

(j) Whether Defendants breached the implied warranty of merchantability pursuant to the Song-Beverly Act; and

(k) Whether Defendants breached their express warranties under California Law.

140. Adequate Representation: Plaintiff will fairly and adequately protect the interests of the Class Members. Plaintiff has retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Plaintiff intends to vigorously prosecute this action.

141. Predominance and Superiority: Plaintiff and Class Members have all suffered, and will continue to suffer, harm and damages as a result of Defendants' unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy. Because of the relatively small size of the individual Class Members' claims, it is likely that only a few Class Members could afford to seek legal redress for Defendants' misconduct will continue unabated without remedy or relief.

Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that it will conserve the resources of the courts and the litigants and promote consistency and efficiency of adjudication.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

**(Violation of California's Consumers Legal Remedies Act, California Civil Code § 1750, et seq.)**

**(Plaintiff, individually, and on Behalf of the CLRA Sub-Class)**

142. Plaintiff David Rosenfeld ("Plaintiff") incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

143. Plaintiff brings this cause of action on behalf of himself and the CLRA Sub-Class.

144. Defendants are "persons" as defined by California Civil Code § 1761(c).

145. Plaintiff and the CLRA Sub-Class members are "consumers" within the meaning of California Civil Code § 1761(d) because they purchased or leased their Class Vehicles primarily for personal, family, or household use.

146. By failing to disclose and concealing the defective nature of the powertrain and dual-clutch transmission from Plaintiff and prospective CLRA Sub-Class members, Defendants violated California Civil Code § 1770(a), as they represented that the Class Vehicles had characteristics and benefits that they do not have and represented that the Class Vehicles were of a particular standard, quality, or grade when they were actually of another. See Cal. Civ. Code §§ 1770(a)(5) & (7).

147. Defendants' unfair and deceptive acts or practices occurred repeatedly in Defendants' trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

148. Defendants knew that the Class Vehicles suffered from an inherent safety concern regarding the Rollaway Defect, where the Class Vehicles were defectively designed, and were not suitable for their intended use.

149. As a result of their reliance on Defendants' omissions, owners and/or lessees of the Class Vehicles, including Plaintiff, suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the Rollaway Defect, Plaintiff and the CLRA Sub-Class members were harmed and suffered actual damages in that the Class Vehicles and their components are substantially certain to fail before their expected useful life has run.

150. Defendants were under a duty to Plaintiff and the CLRA Sub-Class members to disclose the Rollaway Defect and/or the associated repair costs because:

(a) Defendants were in a superior position to know the true state of facts about the Rollaway Defect in the Class Vehicles;

(b) Plaintiff and the CLRA Sub-Class members could not reasonably have been expected to learn or discover that the Class Vehicles had a dangerous Rollaway Defect until it manifested; and

(c) Defendants knew that Plaintiff and the CLRA Sub-Class members could not reasonably have been expected to learn of or discover the safety defect.

151. In failing to disclose the Rollaway Defect, Defendants knowingly and intentionally concealed material facts and breached their duty not to do so.

152. The facts Defendants concealed from or failed to disclose to Plaintiff and the CLRA Sub-Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or pay less. Had Plaintiff and the CLRA Sub-Class members known of the Rollaway Defect in the Class Vehicles, they would not have purchased or leased the Class Vehicles or would have paid less for them.

153. Plaintiff and the CLRA Sub-Class members are reasonable consumers who do not expect their vehicles to exhibit problems such as the Rollaway Defect. This is the reasonable and objective consumer expectation relating to a vehicle's ability to safely engage or disengage the powertrain.

154. As a result of Defendants' conduct, Plaintiff and the CLRA Sub-Class members were harmed and suffered actual damages in that the Class Vehicles experienced and will continue to experience problems such as the Rollaway Defect.

155. As a direct and proximate result of Defendants' unfair or deceptive acts or practices, Plaintiff and the CLRA Sub-Class members suffered and will continue to suffer actual damages.

156. Plaintiff and the CLRA Sub-Class members are entitled to equitable relief.

157. Prior to the filing of the original Complaint, on April 2, 2026 for BMW NA and April 7, 2026 for BMW AG, Plaintiff provided Defendants with notice of their violations of the CLRA pursuant to California Civil Code § 1782(a). More than 30 days have elapsed since Plaintiff provided those notices, and Defendants have not provided appropriate correction, repair, replacement, or other relief in response. Plaintiff therefore seeks the damages and other relief available under the CLRA on behalf of himself and the CLRA Sub-Class.

**SECOND CAUSE OF ACTION**

**(Violation of California Business & Professions Code § 17200, et seq.)**

**(Plaintiff, individually, and on Behalf of the California Sub-Class)**

158. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

159. Plaintiff brings this cause of action on behalf of himself and the California Sub-Class ("CA Sub-Class").

160. As a result of their reliance on Defendants' omissions, owners and/or lessees of the Class Vehicles, including Plaintiff, suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the Rollaway Defect, Plaintiff and the CA Sub-Class members were harmed and suffered actual damages in that the Class Vehicles' powertrain and/or its components are substantially certain to fail before their expected useful life has run.

161. California Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

162. Plaintiff and the CA Sub-Class members are reasonable consumers who do not expect their Class Vehicle to exhibit problems such as: a) a pronounced delay in acceleration, in both forwards and reverse gears, b) unexpected and uncontrolled rolling forward or backward randomly while in gear and awaiting clutch engagement (especially on hills or roads with grades), and c) the tendency to jerk forward unexpectedly.

163. Defendants knew the Class Vehicles and their powertrains were defectively designed or manufactured, would fail prematurely, and were not suitable for their intended use.

164. In failing to disclose the Rollaway Defect, Defendants have knowingly and intentionally concealed material facts and breached their duty to refrain from such conduct.

165. Defendants were under a duty to Plaintiff and the CA Sub-Class members to disclose the defective nature of the Class Vehicles because:

(a) Defendants were in a superior position to know the true state of facts about the safety defect in the Class Vehicles; and

(b) Defendants actively concealed the defective nature of the Class Vehicles from Plaintiff and the CA Sub-Class.

166. The facts Defendants concealed from or failed to disclose to Plaintiff and the CA Sub-Class members are material in that a reasonable person would have considered them to be important in deciding whether to purchase or lease Class Vehicles. Had they known of the Rollaway Defect, Plaintiff and the other CA Sub-Class members would have paid less for Class Vehicles or would not have purchased or leased them at all.

167. Defendants continued to conceal the Rollaway Defect in the Class Vehicles even after Plaintiff and the other CA Sub-Class members began to report problems.

168. Defendants' conduct was and is likely to deceive consumers.

169. Defendants' acts, conduct, and practices were unlawful, in that they constituted:

(a) Violations of California's Consumers Legal Remedies Act;

(b) Violations of the Song-Beverly Consumer Warranty Act; and

(c) Breach of Express Warranty under California Commercial Code § 2313.

170. By their conduct, Defendants engaged in unfair competition and unlawful, unfair, and fraudulent business practices.

171. Defendants' unfair or deceptive acts or practices occurred repeatedly in Defendants' trade or business and were capable of deceiving a substantial portion of the purchasing public.

172. As a direct and proximate result of Defendants' unfair and deceptive practices, Plaintiff and the other CA Sub-Class members have suffered and will continue to suffer actual damages.

173. Defendants have been unjustly enriched and should be required to make restitution to Plaintiff and the other CA Sub-Class members pursuant to §§ 17203 and 17204 of the Business & Professions Code.

**THIRD CAUSE OF ACTION**

**(Breach of Implied Warranty Pursuant to Song-Beverly Consumer Warranty Act, California Civil Code §§ 1792 and 1791.1, et seq.)**

**(On Behalf of the Implied Warranty Sub-Class)**

174. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

175. Plaintiff brings this cause of action against Defendants on behalf of himself and the Implied Warranty Sub-Class (IW Sub-Class).

176. BMW of North America, LLC was at all relevant times the distributor and seller of the Class Vehicles in the United States. BMW AG was at all relevant times the

designer and manufacturer of the Class Vehicles and, as the entity identified on the face of the Warranty Booklets and Owner's Manuals accompanying each Class Vehicle, was also a warrantor of the Class Vehicles within the meaning of the Song-Beverly Consumer Warranty Act. Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

177. BMW of North America, LLC, as the distributor and warrantor of the Class Vehicles, provided Plaintiff and the IW Sub-Class members with an implied warranty that the Class Vehicles and their components and parts are merchantable and fit for the ordinary purposes for which they were sold. However, the Class Vehicles are not fit for their ordinary purpose of providing reasonably reliable and safe transportation because, inter alia, the Class Vehicles suffered from an inherent Rollaway Defect at the time of sale and thereafter and are not fit for their particular purpose of providing safe and reliable transportation.

178. BMW AG impliedly warranted the Class Vehicles in its capacity as their designer and manufacturer, and as the entity identified as the manufacturer in the Warranty Booklets and Owner's Manuals provided with each Class Vehicle. BMW of North America, LLC impliedly warranted the Class Vehicles in its capacity as their distributor and warrantor in the United States. This implied warranty included, among other things: (i) a warranty that the Class Vehicles, which were designed and manufactured by BMW AG and supplied, distributed, and/or sold by BMW of North America, LLC, would provide safe and reliable transportation; and (ii) a warranty that the Class Vehicles would be fit for their intended use.

179. BMW AG is in privity with Plaintiff and the IW Sub-Class members because BMW AG is identified directly on the face of the Warranty Booklets and Owner's Manuals accompanying each Class Vehicle as the manufacturer and warrants those vehicles to end consumers. BMW AG's direct warranty commitments to consumers — made through the warranty documents incorporated into each Class Vehicle sale — establish privity between BMW AG and Plaintiff and the IW Sub-Class members for

purposes of the Song-Beverly Consumer Warranty Act. BMW of North America, LLC, as BMW AG's wholly-owned subsidiary and the authorized distributor through which BMW AG's vehicles reach California consumers, also stands in privity with Plaintiff and the IW Sub-Class members.

180. Contrary to the applicable implied warranties, the Class Vehicles at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiff and the IW Sub-Class members with reliable, durable, and safe transportation. Instead, the Class Vehicles are defective, including the Rollaway Defect.

181. The Rollaway Defect is inherent and was present in each Class Vehicle at the time of sale.

182. As a result of Defendants' breach of the applicable implied warranties, owners and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the Rollaway Defect, Plaintiff and the IW Sub-Class members were harmed and suffered actual damages in that the Class Vehicles and/or their components are substantially certain to fail before their expected useful life has run.

183. Defendants' actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use in violation of California Civil Code §§ 1792 and 1791.1.

**FOURTH CAUSE OF ACTION**

**(Breach of Express Warranty Pursuant to Cal. Com. Code §§ 2313, 10210)**

**(On Behalf of the California Sub-Class)**

184. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

185. Plaintiff brings this cause of action on behalf of himself and the CA Sub-Class.

186. BMW NA provided all purchasers and lessees of the Class Vehicles with an express warranty described infra, which became a material part of the bargain. Accordingly, Defendant's express warranty is an express warranty under California law.

187. The powertrains (including the DCT's) were manufactured and/or installed in the Class Vehicles by BMW AG and are covered by the express warranty.

188. In a section entitled "New Vehicle Limited Warranty," Defendant's express warranty provides, in relevant part, that "BMW of North America, LLC (BMW NA) warrants… against defects in materials or workmanship to the first retail purchaser, and each subsequent purchaser…" and that an "authorized BMW center will, without charge for parts and labor (including diagnosis), either repair or replace the defective part(s) using new or authorized re-manufactured parts."

189. Defendants breached the express warranties by selling and leasing Class Vehicles with powertrains that were defective, requiring repair or replacement within the warranty period, and refusing to honor the express warranty by repairing or replacing, free of charge, the powertrains or DCT's. In addition, when Defendants did agree to pay a portion of the costs, Defendants nevertheless breached the express warranty by simply replacing Class Members' defective DCT's with similarly defective DCT's, thus failing to "repair" the defect.

190. Plaintiff was not required to notify Defendants of the breach because affording Defendants a reasonable opportunity to cure their breach of written warranty would have been futile. Defendants were also on notice of the defect from complaints and service requests they received from Class Members, from repairs and/or replacements of the powertrain components, and from other internal sources.

191. As a direct and proximate cause of Defendants' breach, Plaintiff and the other Class Members have suffered, and continue to suffer, damages, including economic damages at the point of sale or lease. Additionally, Plaintiff and the other Class Members have incurred or will incur economic damages at the point of repair in the form of the cost of repair.

192. Plaintiff and the other Class Members are entitled to legal and equitable relief against Defendants, including actual damages, consequential damages, specific performance, attorneys' fees, costs of suit, and other relief as appropriate.

**FIFTH CAUSE OF ACTION**

**(Breach of Express Warranty under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2303 et seq.)**

**(By Plaintiff Individually)**

193. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

194. Plaintiff brings this cause of action individually against Defendants.

195. BMW provided all purchasers and lessees of the Class Vehicles with an express warranty described infra, which became a material part of the bargain.

196. The powertrain, DCT, and its component parts were manufactured and/or installed in the Class Vehicles by Defendants and are covered by the express warranty.

197. In a section entitled "New Vehicle Limited Warranty," Defendant's express warranty provides, in relevant part, that "BMW of North America, LLC (BMW NA) warrants… against defects in materials or workmanship to the first retail purchaser, and each subsequent purchaser…" and that an "authorized BMW center will, without charge for parts and labor (including diagnosis), either repair or replace the defective part(s) using new or authorized re-manufactured parts."

198. Defendants breached the express warranties by selling and leasing Class Vehicles with powertrains that were defective, requiring repair or replacement within the warranty period, and refusing to honor the express warranty by repairing or replacing, free of charge, the powertrain and its component parts. Defendants have failed to "repair" the defects as alleged herein.

199. Plaintiff was not required to notify Defendants of the breach because affording Defendants a reasonable opportunity to cure their breach of written warranty would have been futile. Defendants were also on notice of the defect from complaints

and service requests they received from Class Members, from repairs and/or replacements of the powertrain and DCT, and from other internal sources.

200. Plaintiff also provided notice to Defendants of their breach of warranty claims under the MMWA by letter dated April 2, 2026 for BMW and April 7, 2026 for BMW AG.

201. As a direct and proximate cause of Defendants' breach, Plaintiff has suffered, and continue to suffer, damages, including economic damages at the point of sale or lease. Additionally, Plaintiff has incurred or will incur economic damages at the point of repair in the form of the cost of repair.

202. Plaintiff is entitled to legal and equitable relief against Defendants, including actual damages, consequential damages, specific performance, attorneys' fees, costs of suit, and other relief as appropriate.

**SIXTH CAUSE OF ACTION**

**(Breach of Implied Warranty under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2303 et seq.)**

**(By Plaintiff Individually)**

203. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

204. Plaintiff brings this cause of action individually against Defendants.

205. The Class Vehicles are a "consumer product" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

206. Plaintiff is a "consumer" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

207. Defendants are "suppliers" and BMW of North America, LLC is a "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

208. Defendant BMW NA impliedly warranted that the Class Vehicles were of merchantable quality and fit for use. This implied warranty included, among other things:

(i) a warranty that the Class Vehicles manufactured by BMW AG, and supplied, distributed, and/or sold by BMW NA would provide safe and reliable transportation; and (ii) a warranty that the Class Vehicles would be fit for their intended use while the Class Vehicles were being operated.

209. Contrary to the applicable implied warranties, the Class Vehicles at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiff with reliable, durable, and safe transportation. Instead, the Class Vehicles are defective, due to presence of the Rollaway Defect.

210. Defendants' breach of implied warranties has deprived Plaintiff of the benefit of his bargain.

211. The amount in controversy of Plaintiff's individual claims meets or exceeds the sum or value of $25,000. In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

212. Defendants have been afforded a reasonable opportunity to cure their breach, including when Plaintiff brought his vehicle in for diagnoses related to the Rollaway Defect.

213. As a direct and proximate cause of Defendants' breach of implied warranties, Plaintiff sustained and incurred damages and other losses in an amount to be determined at trial. Defendants' conduct damaged Plaintiff, who is entitled to recover actual damages, consequential damages, specific performance, diminution in value, costs, attorneys' fees, and/or other relief as appropriate.

214. As a result of Defendants' violations of the Magnuson-Moss Warranty Act as alleged herein, Plaintiff has incurred damages.

215. Plaintiff also provided notice to Defendants of his breach of warranty claims under the MMWA by letter dated April 2, 2026 for BMW NA and April 7, 2026 for BMW AG.

## SEVENTH CAUSE OF ACTION

**(For Fraud by Omission or Fraudulent Concealment)**

**(On Behalf of the Nationwide Class, or, in the Alternative, on Behalf of All Sub-Classes)**

216. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

217. Plaintiff brings this cause of action on behalf of himself and the Class or, alternatively, on behalf of all Sub-Classes against Defendants.

218. Defendants knew that the Class Vehicles suffered from an inherent Rollaway Defect, were defectively designed and/or manufactured, and were not suitable for their intended use. As alleged above, BMW AG acquired knowledge of the Rollaway Defect through its design, engineering, development, manufacture, and testing of the Class Vehicles and their Powertrain and DCT Systems, while BMW NA acquired knowledge through warranty claims, dealer reports, consumer complaints, and other field data. BMW AG and BMW NA also acquired and shared knowledge concerning the Rollaway Defect through their respective roles in developing, approving, disseminating, and implementing technical communications and repair guidance concerning the Class Vehicles.

219. Defendants concealed from and failed to disclose to Plaintiff and Class Members the defective nature of the Class Vehicles.

220. Defendants were under a duty to Plaintiff and Class Members to disclose the defective nature of the Class Vehicles because:

221. Defendants were in a superior position to know the true state of facts about the safety defect contained in the Class Vehicles;

222. The omitted facts were material because they directly impact the safety of the Class Vehicles;

223. Defendants knew the omitted facts regarding the Rollaway Defect were not known to or reasonably discoverable by Plaintiff and Class Members;

224. Defendants made partial disclosures about the quality of the Class Vehicles without revealing their true defective nature; and,

225. Defendants actively concealed the defective nature of the Class Vehicles from Plaintiff and Class Members.

226. The facts concealed or not disclosed by Defendants to Plaintiff and the other Class Members are material in that a reasonable person would have considered them to be important in deciding whether to purchase or lease Defendants' Class Vehicles or pay a lesser price for them. It is a material safety concern for a vehicle to exhibit a Rollaway Defect, as it can cause an inability to control the vehicle on a roadway. Had Plaintiff and Class Members known about the defective nature of the Class Vehicles, they would not have purchased or leased the Class Vehicles or would have paid less for them.

227. Defendants concealed or failed to disclose the true nature of the design and/or manufacturing defects contained in the Class Vehicles to induce Plaintiff and Class Members to act thereon. Plaintiff and the other Class Members justifiably relied on Defendants' omissions to their detriment. This detriment is evident from Plaintiff and Class Members' purchase or lease of Defendants' defective Class Vehicles.

228. Defendants continued to conceal the defective nature of the Class Vehicles even after Class Members began to report the problems. Indeed, Defendants continue to cover up and conceal the true nature of the problem today.

229. As a direct and proximate result of Defendants' misconduct, Plaintiff and Class Members have suffered and will continue to suffer actual damages. Plaintiff and the Class reserve their right to elect either to: (a) rescind their purchase or lease of the defective Vehicles and obtain restitution; or (b) affirm their purchase or lease of the defective Vehicles and recover damages.

230. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and the Class's rights and well-being to enrich Defendants. Defendants' conduct warrants an assessment of punitive

damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## RELIEF REQUESTED

231. Plaintiff, on behalf of himself and all others similarly situated, requests the Court enter judgment against Defendants, as follows:

(a) An order certifying the proposed Class and Sub-Classes as to the claims asserted on a class wide basis, designating Plaintiff as a named representative of the Class, and designating the undersigned as Class Counsel;

(b) A declaration that Defendants are financially responsible for notifying all Class Members about the Rollaway Defect, including the need for periodic maintenance;

(c) An order enjoining Defendants from further deceptive distribution, sales, and lease practices with respect to Class Vehicles; compelling Defendants to issue a voluntary recall for the Class Vehicles pursuant to 49 U.S.C. § 30118(a); compelling Defendants to repair and eliminate the Rollaway Defect from every Class Vehicle; enjoining Defendants from selling the Class Vehicles with the misleading information; and/or compelling Defendants to reform their warranty, in a manner deemed to be appropriate by the Court, to cover the injury alleged and to notify all Class Members that such warranty has been reformed;

(d) An award to Plaintiff and the Class for compensatory, exemplary, and statutory damages, including interest, in an amount to be proven at trial;

(e) Any and all remedies available to Plaintiff individually pursuant to the Magnuson-Moss Warranty Act;

(f) An order requiring Defendants to make restitution to Plaintiff and Class Members as authorized by law;

(g) An award of attorneys' fees and costs, as allowed by law;

(h) An award of pre-judgment and post-judgment interest, as provided by law;

(i) Leave to amend the Complaint to conform to the evidence produced at trial; and

(j) Such other relief as may be appropriate under the circumstances.

**DEMAND FOR JURY TRIAL**

232. Pursuant to Federal Rule of Civil Procedure 38(b) and Local Rule 38-1, Plaintiff hereby demands a trial by jury of all issues in this action so triable.

Dated: August 31, 2026

Respectfully submitted,
DRAKE LAW FIRM

/s/ Laura E. Goolsby

Tarek H. Zohdy
Laura E. Goolsby
Ahmed Yousef

*Attorneys for Plaintiff and the Putative Class*